[586]                    *Ex parte* Moulton *vs.* Bennett.

Where, in a *qui tam action* commenced previous to the Revised Statutes, brought for the recovery of a penalty, there was a recovery for the plaintiff, and his attorney had a bill of costs taxed, the payment of which he exacted of the defendant, who paid the same without execution, *it was held,* inasmuch as costs were not recoverable in such actions previous to the Revised Statutes, that the attorney was bound to *refund,* and an order to that effect was accordingly made, although nearly *four years* had elapsed since the arrangement between the attorney and the defendant, and notwithstanding that the payment was *voluntarily made:* the court holding the rule that money paid *under a mistake of law* is not recoverable back, to be inapplicable as between attorney and client, and as between the attorney and the opposite party, where money is paid for professional services, the compensation for which is regulated by statute.

This was an application for a peremptory order (after an order to show cause) directing Alanson Bennett, one of the attorneys of this court to refund to the relator $150.47, received from him as *taxable costs* in a *qui tam action* prosecuted by Bennett as the attorney of one Mitchell against J. E. Hinman, Esq., late sheriff of Oneida, to recover the penalty of $250, given by § 6 of the act to prevent abuses and delays in the action of replevin. (1 *R. L.* 91.) Hinman was sued for the omission of *Moulton,* who was his deputy, to try the right upon a claim of property. The suit was tried in 1830, but was commenced *previous* to the Revised Statutes taking effect. The plaintiff recovered. (*Vide* 8 *Wendell,* 667.) The plaintiff's attorney had costs taxed in the cause at $169.12, which sum was subsequently reduced to $150.47. On the 30th November, 1832, an arrangement was entered into between the attorney and Moulton, that the latter should pay the costs as liquidated, at $150.47, and also the *one half* of the penalty; the other half not to be demanded until a requisition should be made in behalf of the state. In pursuance of this arrangement Moulton paid to the attorney $150.47, and the *half* of the penalty, and now asks that the $150.47 be refunded, on the ground that he has been advised, that costs were not recoverable in such action.

[587] Bennett resists the motion, on the ground that *Mitchell,* his client, is unable to pay the costs of the action, and that if they had not been paid by the relator, he would have exacted the *whole* of the penalty, and thus obtained his costs. He further states, that he has paid $50 counsel fees, and paid over to his client the sum of $65.

The motion was heard and decided by Chief Justice Nelson, who delivered a written opinion, in which, after adverting to the law on this subject, as found in 2 *Bacon's Abr.* 49, *tit.* Costs, E. 3; 1 *Salk.* 30 *and* 206; *Willes,* 440; 1 *H. Black.* 10; *Cro. Car.* 559; 1 *R. L. of* 1813, *p.* 347, § 19; 5 *Johns. R.* 25; 9 *Wendell,* 494, *and* 11 *id:* 167, he comes to the following conclusion: It is perfectly clear, then, that Moulton (and I consider him as standing in the footsteps of Hinman) was not liable to pay any costs to the plaintiff or his attorney, according to the law of the land; and that the sum of $150.47 was exacted by the attorney without right or title; that so much money has been received by him under a mistake or misapprehension of the law, without the fault probably of any one, without consideration or color of claim, however, and which, *ex æquo et bono,* belongs to Moulton. [The opinion then proceeds as follows:]

An attorney who has set up a claim to and received a bill of costs under a belief that he is legally entitled to it, when he is not, is certainly not obnoxious to censure. He may justly expect the indulgence due to honest error. But if the claim should be put forth with full knowledge of its illegality, and his professional office and the forms of law used for the purpose of extorting the payment, there cannot be a doubt that the act would involve a prostitution of his professional character, a violation of official duty and of his oath of office, that would demand the most summary interposition of the court. He would be undeserving the privileges or character of the profession, or to have his name continued upon the roll of attorneys. There is nothing in the papers before us in

Moulton v. Bennett.

the slightest degree imputing to the attorney in this case, a knowledge or belief that he was not entitled to these costs. On the contrary, I have no doubt he entertained a firm opinion they were collectable, and honestly claimed them. This, however, by no means determines his title to them. It [588] exempts him from blame. He still has money in his hands, the property of another. He has claimed and received it for professional services of a party who owed him nothing for those services, and to whom he had no right to charge them. So far as respects the duty or obligation to refund, it seems to me to be as strong and binding as if the costs had been dishonestly exacted. As an abstract question of property there is no difference. It is wholly with Moulton.

I lay out of the case the technical maxim of law, " *ignorantia juris non excusat,*" as not applicable to attorney and client, or attorney and party in respect to claims for professional services founded upon statute regulation. The profession and privileges of an attorney give color to such a claim, and the means of enforcing it, which do not belong to laymen, nor enter into the business or ordinary dealings of men. The reason of the rule does not apply. On this subject the law has not only specially provided for the cases where costs are chargeable, and fixed the value of them, (2 *R. S.* 162, 616, 621,) but has expressly prohibited, under the penalty of a misdemeanor, the taking or receiving " any other or greater fee or reward for such service, but such as shall be allowed by the laws of this state." (2 *R. S.* 650, § 5, 7. See also 2 *R. L.* 3, § 1.) Very peremptory instructions are also given by the statute to the taxing officers in respect to costs. (2 *R. S.* 653, § 5.) The claim and reception of a bill of costs, therefore, by the attorney without right or title, as before observed, is a violation of professional duty, a wrong done which cannot consistently give title to them even in the absence of a corrupt intent. To allow him to set up the maxim, *volenti non fit injuria,* in such a case, and entrench himself behind it, conceding they have been exacted without law, would be disregarding the principle, spirit, and purpose of the numerous statutes on this subject. It is due to the honest and exalted character of the profession, as well as to the rights of parties, that these statutes be faithfully enforced. They afford, as they should do, a reasonable compensation for and protection to professional labor, arduous as it is, and for the learning and skill required in successful practitioners of the [589] law; while, at the same time, the rights of suitors are properly guarded.

The equitable grounds put forth to retain the costs, I am of opinion are not supported by the facts. The portion of the taxed bill actually paid over to the client, the attorney ought not to be compelled to refund. But neither of the affidavits assert any specific payment over or for the benefit of the client to third persons, exceeding $125, a moiety of the penalty recovered. It was in the power of the attorney and client to have put this point beyond question. The only items specified are $60 paid as a counsel fee, and $65 paid over to the plaintiff, making exactly the sum of $125. The settlement set up adds nothing to the attorney's title to the costs, nor does it vary the legal effect from the case of a collection of them by execution. If they had not been paid voluntarily, their collection would have been enforced. Neither can we take into consideration the chances of the attorney collecting the costs from his client, which he may have lost in the interim since the payment by Moulton, had they not been thus paid by Moulton. The suit was brought upon the credit and responsibility of the client for the costs, in case they were not legally recovered of the adverse party. If the attorney did not choose to rest on this alone, he should have exacted security. Nor shall we inquire into the past or present ability of the client to pay the costs. If Mitchell is not as able now as he was at the time of the payment by Moulton, (and there is nothing in the affidavits showing that he is not,) it is the misfortune of the attorney. The blame of the error does not lie altogether with Moulton. If it was wrong in him to pay the costs, it was equally so in the attorney to exact and receive them. If the attorney suffer by the act, he cannot lay it to the

Reynolds v. Tooker.

account of Moulton with any greater propriety than it can be charged upon himself.

Upon the whole, after a careful examination and consideration of the case, I am bound to conclude that the attorney must refund the costs, but without interest, and without costs of this proceeding.